[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for dissolution of marriage and other relief brought to the judicial district of Waterbury. Many of the facts that give rise to this action are not in dispute. The plaintiff and the defendant, whose maiden name is Terry Lawrence, were married on March 1, 1981, in Southbury, Connecticut. The plaintiff has resided continuously in the state of Connecticut for at least twelve months immediately prior to the date the complaint was filed. The marriage between the parties has broken down irretrievably without any reasonable prospects of reconciliation. There are two minor children issue of this marriage, Brittany Serke born CT Page 6354 March 7, 1985 and Garett Serke born April 16, 1990. No other minor children have been born to the defendant wife since the date of marriage of the parties. Neither party has received state assistance or state welfare.
The parties separated on May 6, 2001. The parties are in dispute as to when the marriage broke down irretrievably without any reasonable prospects of reconciliation. The court finds that the marriage had broken down irretrievably without any reasonable prospects of reconciliation by the end of the calendar year 1996 and that each party is equally at fault for the breakdown.
The plaintiff was born on April 30, 1955.
The plaintiff's financial affidavit dated March 27, 2002, shows a debt to Fleet Bank in the amount of $19,800. That is a business line of credit loan that he has had since 1997 for which the business pays interest only. His affidavit shows a liability to Harley Davidson Credit in the amount of $3,465. He shows that same liability a second time on Schedule A to his financial affidavit where he reduces the fair market value of that vehicle of $10,100 by the loan balance of $3,465 for an equity of $6,645. He also owes a debt for attorneys fees as well as a debt to Davis Auctions for an appraisal in the amount of $1,000. The plaintiff has life insurance through Northwest Mutual in the face amount of $453,865. The cash surrender value of his life insurance policy is $6,120. He has an IRA with a value of $5,015. He owns a 1996 Chevrolet Pickup truck with a value of $3,550 and a 1993 Chevrolet Suburban with a value of $10,920.
The plaintiff has been in business since 1987 and is a sole proprietor primarily involved in excavation work. He is a high school graduate. He also attended Chester Institute for Architectural Drafting where he obtained a degree. The parties are in dispute as to the plaintiff's gross weekly income from his business of contracting and excavation. The plaintiff in his financial affidavit dated March 27, 2002, shows his gross weekly income to be $1,076. He has not filed his 2001 Income Tax Return. The most credible evidence regarding his business income is based on his business records for the calendar year 2001. His record shows his gross sales for the calendar year 2001 to be $161,653 which the court so finds. His total cost of goods sold amounted to $42,728 thereby reducing his gross profit to $118,925. He then has total claimed business expenses of $56,650 reducing his gross annual income for the calendar year 2001 to $62,256. The dispute between the parties relates to the items that the plaintiff claims as business expenses. One of the deductions that is claimed is for attorney's fees in the amount of $12,767. The court finds that there is no credible evidence that the attorney's fees in question were incurred on behalf of his business as opposed to being incurred in CT Page 6355 the existing dissolution of marriage action and therefore the court disallows that deduction. Another claimed business deduction is for rental expense in the amount of $8,891. There is no credible evidence that the plaintiff's business incurred such a rental expense. By disallowing those two deductions, the plaintiff's gross annual income for the calendar year 2001 is increased from $62,256 to $83,913 or $1,613.75 weekly, less deductions for Federal and State Income Tax. In entering alimony and support orders and property orders, the court is using $1,613.75 as the plaintiff's gross weekly income less deductions.
The parties are in dispute as to the fair.market value of the equipment that the plaintiff owns in his business. One appraisal is in the amount of $122,250. A second appraisal is between a low of $115,500 and a high of $173,500. From the evidence presented, the court finds that the fair market value of the equipment owned by the plaintiff, in his business, is $122,250.
The defendant was born on February 23, 1958. She is in good health. She graduated high school and did not have any college or vocational training. She intends to return to work part-time after the divorce is over and intends to take a computer training program.
The defendant obtained, by quit-claim deed gift on October 26, 1993, a one-third interest in a piece of real estate located at Eden Hill Road, Newtown, Connecticut. That real estate was eventually subdivided into six lots with the defendant retaining sole ownership in three of the lots and her sister retaining sole ownership in three of the lots. The plaintiff claims that he was instrumental in obtaining the final subdivision approval. The court finds that that claim is not credible.
The court finds that the plaintiff was not instrumental regarding the engineering work, surveying work, wetland work, or legal issues that were involved in obtaining final subdivision approval.
The excavation work that the plaintiff performed at the site, including installation of a fire pond and driveway, was work for which he was paid.
The only remaining lot that she has at Eden Hill Road in Newtown, Connecticut has a fair market value of $205,000.
Between January 1996 and December 1999, she received gifts from her aunt totaling between $67,000 and $68,000. The plaintiff used those funds towards a payment of real estate taxes, engineering fees, surveying fees, legal fees, and taxes due to the Department of Revenue Services from her grandfather who was in the chain of title. CT Page 6356
The defendant is currently unemployed. She has a liability to Kenneth Pia, her expert witness in the range of $3,000 — $4,000. She owes Eastern Equipment for appraisal fees $1,500. She also owes ORTS Reporting and marshal costs totaling $1,635. She also owes attorney's fees. She owns a 1997 Chevrolet Blazer with a value of $8,770 and a loan balance of $347.78 and an equity of $8,422.22. She owns household furniture and miscellaneous personal property as well as jewelry that she received as a gift from her aunt with a value of $8,000. She has a savings account with a balance of $460. She has stocks and bonds through CSFB Direct with a value of $43,533.53. She is also a 50% tenant in common with her sister with stocks through CSFB Direct with a value of $3,752.96. She has life insurance in the face amount of $171,919. The cash surrender value of her life insurance policy is $7,111. She also has a deferred compensation plan through CSFB Direct consisting of an IRA with a value of $4,760.16. The funds that the defendant has in CSFB are as a result of her sale of two lots in 1999 from the Eden Hill Road Subdivision. She also owns a 1969 Chevelle which the court finds has a value of $2,000.
The parties are in dispute as to the fair market value of the family home located at 127 Stiles Road, Southbury, Connecticut. The plaintiff claims that its fair market value is $270,000 and the defendant claims that its fair market value is $250,000. From the evidence presented, the court finds that the fair market value of the family home is $260,000, and it has a mortgage with a balance of $140,325, and an equity of $119,675.
The current cost for the plaintiff for his existing health insurance for himself, the defendant and the two children is $879.58 monthly. That cost will not change upon dissolution of marriage. The cost for health insurance through Health Reinsurance Association through Healthnet for the plaintiff would be $1,405.33 per quarter with an additional cost of $1,041.69 for the children per quarter. The cost for health insurance through Health Reinsurance Association through United Healthcare would be $1,390.98 per quarter for the plaintiff with an additional $1,031.05 per quarter for the two minor children. The cost of health insurance for the defendant through Healthnet would be $1,501.92 per quarter with her cost through United Healthcare being $1,486.58 per quarter.
The following table shows the amounts and sources of income for the plaintiff and the defendant from 1995 through 2000.
[EDITORS' NOTE: THE TABLE IS ELECTRONICALLY NON-TRANSFERRABLE.]
The defendant had been doing the book work for the plaintiff's business for which she was paid $2,000 annually in the calendar years 1995 and CT Page 6357 1996. She stopped handling his books at the end of 1996 and started to work part-time in January of 1997 with her part-time employment ending in February of 2001.
This court has considered the provisions of § 46b-82 regarding the issue of alimony, and has considered the provisions of § 46b-81 (c) regarding the issues of property division, and has considered the provisions of § 46b-56 regarding the issues of custody and visitation, and has considered the provisions of § 46b-84 and the Child Support Guidelines regarding the issue of support, and has considered the provisions of § 46b-62 regarding the issue of attorney's fees. The court enters the following orders:
 ORDERS
A. By way of dissolution
1. The marriage between the parties is dissolved and each party is declared to be single and unmarried.
B. By way of custody and visitation, tax exemption, medical insurance, and removal from the state
1. The court enters an order of joint legal custody with primary residence with the defendant mother. She is to have final decision making on education, medical and religious matters after consultation with the plaintiff husband. The plaintiff husband shall have reasonable, liberal and flexible visitation.
2. The plaintiff is to maintain health insurance at his sole cost for the benefit of the minor children for so long as he has a support obligation for each child. The defendant shall be entitled to any COBRA coverage available to her through her husband's insurance company at her sole expense.
3. The plaintiff shall have the right to claim the minor children as exemptions for federal and state income tax purposes for each calendar year in which he is current in his support and alimony payments.
4. Neither party is to permanently remove either of the children from the State of Connecticut without prior court order.
C. By way of support
The plaintiff is ordered to pay to the defendant support in the amount of $304 per week. The unreimbursed medical is to be divided with the CT Page 6358 defendant paying the first $100 for each child annually and the defendant then paying 30% of the unreimbursed medical and the plaintiff paying 70% of the unreimbursed medical.
D. By way of property orders
1. The plaintiff is ordered to quit-claim to the defendant all of his interest in the family home at 127 Stiles Road, Southbury, Connecticut by July 1, 2002.
2. The defendant is to immediately place for sale the lot she owns on Eden Hill Road, Newtown, Connecticut with the net proceeds of the sale after deducting for closing fees to be divided equally between the parties. The court retains jurisdiction over any dispute involving the sale of the lot.
3. The 1987 Blazer shown on the defendant's financial affidavit is awarded to the defendant.
4. All of the household furniture, personal property and jewelry shown on the defendant's financial affidavit is awarded to the defendant.
5. The bank account shown on defendant's financial affidavit is awarded to the defendant.
6. All the stocks, bonds and mutual funds shown on the defendant's financial affidavit with CSFB are awarded to the defendant.
7. The cash surrender value in the defendant's life insurance policy is awarded to the defendant.
8. The deferred compensation plan shown on the defendant's financial affidavit with CSFB is awarded to the defendant.
9. The 1969 Chevelle shown on the defendant's financial affidavit is awarded to the plaintiff. The defendant is to sign whatever documents are necessary to complete that transfer by July 1, 2002.
10. All liabilities shown on defendant's financial affidavit are to be paid by the defendant and she is to hold the plaintiff harmless therefrom.
11. All liabilities shown on plaintiff's financial affidavit are to be paid by the plaintiff and he is to hold the defendant harmless therefrom.
12. The cash surrender value in the life insurance shown on the CT Page 6359 plaintiff's financial affidavit is awarded to the plaintiff.
13. All motor vehicles shown on Schedule A of the plaintiff's financial affidavit are awarded to the plaintiff.
E. By way of alimony
1. The plaintiff is ordered to pay to the defendant alimony in the amount of $300 per week.
2. Alimony is to terminate upon the earliest of the following events: a) the death of the plaintiff; b) the death of the defendant; c) the remarriage of the defendant; or d) June 1, 2008. The youngest child will have turned 18 by that date, and should have graduated High School by that date, and the defendant should have less need for alimony by that date.
3. The term of alimony can not be extended.
4. The amount of alimony is non-modifiable, either based on a substantial change in circumstances or co-habitation under the statute. In entering this order, the court has considered the fact that the plaintiff has filed Financial Affidavits pendente lite seeking to modify the pendente lite orders in which the gross income that he reflected on those affidavits, at best, could be termed to be inaccurate.
This order will allow the defendant to only have to work part-time until such time as the youngest child reaches age 18 which the court finds to be in the best interests of the children.
F. By way of attorney's fees
1. No attorney's fees are awarded in this case.
G. Miscellaneous Orders
1. Counsel for the plaintiff is to prepare the judgment file within thirty (30) days and send it to the guardian ad litem for signature and filing.
2. Commencing with the calendar year 2002, the parties are to exchange copies of their federal and state income tax returns by certified mail/return receipt or registered mail/return receipt within thirty days after such returns have been filed for so long as there is an outstanding alimony order and/or outstanding support order or any outstanding arrearage regarding either or both orders. CT Page 6360
3. An immediate wage execution is authorized for the support and alimony order entered herein.
4. The defendant is restored her maiden name of Terry Lynne Lawrence.
5. Any arrearage on the existing pendente lite orders is not merged into the judgment.
 ___________________, JTR AXELROD